UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **JEFFERICK DIONE JOY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 1:21-cv-01179-STA-jay |
| **HARDEMAN COUNTY, TENNESSEE,** | ) |
| **AND JUDY WIGGINS** | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**

Before the Court is Defendants' Partial Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed on November 11, 2021. (ECF No. 7.) On January 6, 2022, Plaintiff filed a Response in Opposition to Defendants' Motion (ECF No. 13), and on January 18, 2022, Defendants filed a Reply to Plaintiff's Response. (ECF No. 14.) For the reasons discussed below, this Motion is **GRANTED**.

BACKGROUND

On October 7, 2020, Plaintiff was arrested for domestic assault and transported to the Hardeman County Jail. (ECF No. 1, at 5.) While booking Plaintiff, Officer Gina Pittman completed a medical intake form for Plaintiff. (*Id.*) During this process, Plaintiff informed Officer Pittman that he suffered from high blood pressure and had a history of seizures. (*Id.*) Plaintiff was assigned to a top bunk in his prison cell. (*Id.*) At this point in the sequence of events, Plaintiff appeared intoxicated or otherwise impaired. (*Id.*) Soon after being placed into the cell, Plaintiff

1

fell from his top bunk. (*Id.* at 6.) Defendant Wiggins and two correctional officers checked on Plaintiff after his first fall. (*Id.*) However, Plaintiff was not evaluated by a medical professional, nor was Plaintiff reassigned to a different cell or lower bunk bed. (*Id.*) Plaintiff asked to see a nurse, but Defendant Wiggins denied his requests by stating that a nurse was not present. (*Id.* at 6–7.) Apparently, other detainees at the jail requested that staff evaluate Plaintiff after the first fall, due to Plaintiffs apparent instability. (*Id.* at 8.)

At approximately 7:47 P.M., Inmate Phildarrious Mason informed the jail staff that Plaintiff had again fallen from his top bunk. (*Id.*) Plaintiff was bleeding and appeared to be experiencing a seizure. (*Id.*) Defendants observed Plaintiff on the floor of the cell. (*Id.*) Plaintiff was transported to Bolivar General Hospital and then airlifted to Jackson-Madison County General Hospital where he was treated for an intracranial bleed, subdural hematoma, sinus and nasal bone fractures and acute encephalopathy. (*Id.*) As a result of his fall, Plaintiff suffered a permanent head injury. (*Id.*)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,

2

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

ANALYSIS

Defendants' Partial Motion to Dismiss (ECF No. 7) asserts that the Tennessee Government Tort Liability Act ("GTLA") prevents Plaintiff from asserting negligence claims in addition to Plaintiff's 42 U.S.C. § 1983 claims. Defendants also seek to dismiss Plaintiff's claims for injunctive relief and punitive damages against Hardeman County. Defendants provide two reasons for believing that the negligence claims must be dismissed. First, Defendants state that the GTLA bars tort liability claims that arise from the same circumstances as § 1983 claims. Second, Defendants indicate that Plaintiff's negligence claims regarding hiring, training, supervision, and retention are also barred by the GTLA because such actions constitute "discretionary functions." Finally, Defendants argue that Plaintiff's injunctive relief claim is moot and that punitive damages are simply unavailable under § 1983. The Court considers these arguments in turn.

I.   **Negligence and Civil Rights Exception**

The GTLA codifies the Tennessee common law rule of sovereign immunity for governmental entities and consequently controls the liability of Defendant Hardeman County for torts committed by its employees and agents. Tenn. Code Ann. § 29-20-201; *Limbaugh v. Coffee Medical Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). The GTLA provides that Tennessee governmental entities "shall be immune from suit for an injury which may result from the activities of such governmental entities" except as otherwise provided in the statute. Tenn. Code Ann. § 29-20-201(a). The statute removes immunity for "injury proximately caused by a negligent act or

3

omission of any employee within the scope of his employment *except* if the injury arises out of . . . civil rights" violations. Tenn. Code Ann. § 29-20-205(2) (emphasis added). The civil rights exception has been construed to include 42 U.S.C. § 1983 claims. *Johnson v. City of Memphis*, 617 F.3d 864, 872 (2010).

A negligence claim falls under the civil rights exception where "the same circumstances giv[e] rise to both the negligence and civil rights claims." *Partee v. City of Memphis*, 449 F. App'x. 444, 448 (6th Cir. 2011) (alteration in original). A plaintiff cannot circumvent a defendant's immunity by couching its civil rights claim as one of negligence. *See, e.g.*, *Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) (holding that a plaintiff whose alleged injuries arose in the context of her civil rights claims could not avoid GTLA immunity merely by "couching" her claim in terms of negligence).

Here, however, Plaintiff asserts that her negligence claim is distinct from her § 1983 claims. To this point, Plaintiff states:

> [I]t simply cannot be determined at this stage whether the conduct of Defendant Wiggins in failing to recognize that Plaintiff was in need of medical attention and leaving him in a cell where he was at risk of further injury was somehow accidental (negligence) or knowledgeable (deliberate indifference and/or intentional) . . . and these two separate scenarios are distinct.

(ECF No. 13, at 8.) In other words, Plaintiff pleads that Defendants acted either negligently or with deliberate indifference, and Plaintiff believes these claims are factually distinct enough to avoid the GTLA's civil rights exception. Further, Plaintiff notes that Fed. R. Civ. P. 8 permits pleading civil rights violations and negligence claims in the alternative. Although Rule 8(d)(3) allows a party to state as many claims as he has, even inconsistent claims, if a plaintiff alleges that a defendant violated his civil rights, the GTLA still prohibits bringing a negligence claim derived from the same circumstances. *See e.g.*, *Tinkle v. Dyer Cnty., Tennessee*, 2018 WL 6840155, at *2

4

(W.D. Tenn. Dec. 31, 2018); *Doe v. Jackson Madison Cnty. Bd. of Educ.*, 2018 WL 2927777, at *3 (W.D. Tenn. June 7, 2018) (noting that the plaintiff agreed that she could not "bring state law negligence claims that arise out of the same facts and circumstances giving rise to the violation of a civil right, specifically those brought under § 1983" and rejecting the plaintiff's argument that her GTLA claims could be brought in conjunction with her Title IX claim because Title IX is also a civil rights statute); *Stewart v. City of Memphis*, 2017 WL 627467, at *8 (W.D. Tenn. Feb. 15, 2017) (finding that the plaintiffs' state law claims arose out of the same circumstances giving rise to their § 1983 civil rights claims, and, therefore, those claims were barred by the GTLA's retention of immunity for injuries arising from civil rights); *Hargrow v. Shelby Cnty.*, 2014 WL 3891811, at *5 (W.D. Tenn. Aug. 7, 2014) (rejecting the plaintiff's argument that she had made alternative claims sounding in civil rights and negligence and, thus, the GTLA did not bar her state law claims because she had stated "no facts in the Complaint for tort violations other than those underlying her § 1983 claims"). Therefore, Plaintiff cannot bring his negligence claim, even in the alternative.

In contrast to the above authority, Plaintiff relies heavily on the case of *Thompson v. City of Lebanon*, 2014 WL 12677063 (M.D. Tenn. June 10, 2014), aff'd sub nom. *Thompson v. City of Lebanon, Tennessee*, 831 F.3d 366 (6th Cir. 2016). In *Thompson*, the district court held that the defendant's complaint made enough factual distinctions to avoid dismissal under the GTLA by alleging that an officer shot the plaintiff either intentionally or negligently. *Id.* at *21. Although *Thompson* is favorable for Plaintiff, this case is best characterized as anomalous and does not fit the holdings of this Court nor the rest of the Sixth Circuit, as noted in the above paragraphs. In essence, the *Thompson* decision turns the GTLA's civil rights exception into a pleading rule, where parties can plead a defendant's conduct as either intentional or negligent to circumvent sovereign

5

immunity. This interpretation contravenes the history of sovereign immunity,[1] applicable case law, and a plain reading of the civil rights exception.[2] Properly understood, the civil rights exception prevents plaintiffs from alleging both a civil rights violation and a negligence claim from the same set of occurrences. *See Partee v. City of Memphis*, 449 F. App'x. 444, 448 (6th Cir. 2011). Thus, Plaintiff cannot avoid immunity by pleading essentially the same conduct as being either negligent or intentional.

Therefore, Plaintiff's claim for negligence against Defendants is **DISMISSED** pursuant to Rule 12(b)(6).

## II. Negligence and Discretionary Function Exception

Plaintiff's GTLA claims against Defendant Hardeman County for negligent hiring, training, supervision, and retention fall into either the GTLA's exception to the waiver of immunity for discretionary acts or the civil rights exception or both. Section 29-20-205 of the GTLA provides in relevant part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

---

[1] *See* Tenn. Const. art. I, § 17 (permitting suits against Tennessee only to the extent that "the Legislature may by law direct."). In other words, the history of sovereign immunity in Tennessee, as revealed by its Constitution, indicates that the state may be sued only where the legislature permits. Here, Plaintiff cannot simply plead the same circumstances as being factually distinct to avoid sovereign immunity because the legislature has foreclosed this path to recovery. *See id.*

[2] *See Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) ("Tenn. Code Ann. § 29–20–205(2) provides that immunity from suit of all governmental entities is removed or waived for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of 'civil rights.'")

As discussed in *Uhuru v. City of Memphis*, 2008 WL 4646156, at *12 (W.D. Tenn. Oct. 17, 2008),

> "The discretionary functions exception 'recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision' and therefore allows the government to operate without undue interference by the Court." *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992) (citation omitted). Basically, the discretionary function exception "prevents the use of tort actions to second-guess what are essentially legislative or administrative decisions." *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 85 (Tenn. 2001)).

The *Uhuru* Court found that the allegations in the complaint that the Memphis Police Department and its director "failed to adequately screen, train, investigate, and discipline its officer defendants" were not sufficient "to raise more than a speculation that the actions of the City of which the Uhurus complain are not discretionary functions subject to immunity." *Id.*

This Court further explored the discretionary exception to the GTLA's waiver of immunity in another case in which the City of Memphis argued that the GTLA provided immunity against the plaintiff's allegation that it was liable for the death of the decedent "for the failure to screen, hire, train, and supervise its police officers." *Peatross v. City of Memphis*, 2015 WL 13021901 at *8 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016). The Court found that the screening, hiring, training, and supervision of the officers "clearly" fell within the discretionary exception. *Id.*

> In *Bowers*, the Tennessee Supreme Court adopted the "planning-operational" test to determine whether an act fell within the discretionary function exception. *Id.*, 826 S.W.2d at 430. Under this test, "decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity." *Id.* (citing *Carlson v. State*, 598 P.2d 969, 972 (Alaska 1979)). Planning decisions, the court in *Bowers* ruled, often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. *Id.*, 826 S.W.2d at 431.

7

> The sorts of determinations the MPD must make in how it screens, hires, trains and supervises its employees, and how it goes about investigating and disciplining them for any misdeeds can be better characterized as planning rather than operational functions. As a result, the City of Memphis is entitled to governmental immunity under the discretionary function exception of the TGTLA as to Plaintiff's charges of negligent supervision and training found in Count V of his Complaint.

*Id. See also Savage v. City of Memphis*, 620 F. App'x. 425, 429 (6th Cir. 2015) (finding that "the sorts of determinations the [Memphis Police Department] must make in how it trains and supervises its employees, staffs its departments, and investigates the alleged wrongdoing of its employees place the Plaintiffs' direct-negligence claims squarely within the discretionary-function exception"); *Tinkle*, 2018 WL 6840155, at *2 (finding that the "Plaintiffs' GTLA claims against Defendant Dyer County for negligent hiring, training, retention, and supervision fall into the GTLA's exception to the waiver of immunity for discretionary acts"); *Minor v. City of Memphis*, 2006 WL 889333, at *4 (W.D. Tenn. Mar. 30, 2006) ("The question of how thoroughly to train officers or discipline them, like the question of how to discipline combative employees in *Limbaugh*, is a policy determination. Consequently, it receives discretionary function immunity from tort liability under the GTLA.")

Thus, it appears that Plaintiff's claims for negligent hiring, training, supervision, and retention are barred as discretionary functions.

However, Plaintiff argues in his Response that he is not alleging a discretionary function. Instead, Plaintiff claims that the allegedly negligent act is operational—that Defendants failed to follow established policy. Undeniably, *Limbaugh v. Coffee Medical Center* indicates that executing policy is an operational act and not discretionary. "[D]ecisions that merely implement pre-existing policies and regulations are considered to be operational in nature and require the decision-maker to act reasonably in implementing the established policy." 59 S.W.3d 73, 85 (Tenn. 2001). Thus, Plaintiff attempts to avoid sovereign immunity by claiming that the

8

*application* of established policy was negligent not that the policy itself was negligent. To support his point, Plaintiff provides an example that would potentially avoid the discretionary function exception:

> Plaintiff does not attack the policy, but rather the operation of policies or ad hoc decisions that had nothing to do with existing policy, such as Defendant Wiggins' decision to not get Plaintiff immediate medical attention and to leave him in a cell where he was at risk of further injury.

(ECF No. 13, at 12.) But there is a problem with the above example; the civil rights exception for sovereign immunity still applies. Thus, even if Plaintiff has adequately pled an operational act—a misapplication of established policy—Plaintiff still cannot bring the claim because the alleged operational failure exemplified above is the same circumstance that gave rise to Plaintiff's § 1983 claim.

Ordinarily, a claim of negligent hiring, training, supervision, and retention is factually distinct from the act that directly harms the plaintiff. However, because Plaintiff alleges that there was a failure in the application of a policy, namely, Wiggins' alleged failure to provide immediate medical attention, Plaintiff's claim falls back into the civil rights exception. By attempting to avoid one basis for sovereign immunity, Plaintiff has slipped into another area where the government is protected from suit. Although well-reasoned, Plaintiff's argument here falls prey to the nebulous breadth of the GTLA.

But this is not the only argument made by Plaintiff. Alternatively, the Court construes Plaintiff's Complaint as arguing that Defendant Wiggins' conduct on October 7, 2020 is merely *evidence* of negligent hiring, training, supervision, and retention.

In essence, Plaintiff claims that the allegedly negligent acts of October 7, 2020 lend evidence to a disregarding of established policies regarding training, supervision, and retention. Unfortunately, this argument also falls into the civil rights exception because Plaintiff specifically

9

cites the ignoring of established policy in the training, supervision, and retention process as one of the bases for his § 1983 claims:

> To the extent that Defendant Hardeman County had policies or practices in place to ensure that inmates in immediate need of care obtain such care, Defendants failed to follow such policies and/or practices in deliberate indifference to the health and welfare of Plaintiff and/or failed to train the employees and/or failed to enforce such policies. (ECF No. 1, at 9–10.)

Thus, Plaintiff does appear to avoid the discretionary function exception by alleging an operational failure, but because this operational failure is also one of these bases for Plaintiff's civil rights claims, it cannot avoid the civil rights exception for sovereign immunity.

Finally, to the extent that Plaintiff specifically asserts negligence in the hiring process, Plaintiff has simply not alleged enough information to survive the Motion to Dismiss. Instead of pointing to evidence of negligent hiring, Plaintiff states that discovery is required to determine whether there were policies in place and whether Defendant's employees acted in accordance with such policies. (ECF No. 13, at 10.) As this Court has stated elsewhere, a plaintiff must allege additional facts to show an operational act—an act that falls outside the discretionary function exception. *Allred v. Rodriguez*, 399 F. Supp, 3d 730, 736 (W.D. Tenn. 2019) ("Plaintiff has not alleged grounds for a negligence claim against Defendant Decatur County based on facts or circumstances that fall outside the discretionary-function exception to the waiver of immunity."). Unfortunately, Plaintiff may not proceed to discovery without alleging some specific facts that give rise to a plausible claim. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of cause of action will not do." *Bel Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Without alleging specific facts, discovery becomes an impermissible fishing expedition.[3]

---

[3] Similarly, in *Tinkle v. Dyer Cnty.*, this Court held that a lone, conclusory allegation that a defendant entity failed to adequately hire, train, retain, and supervise was insufficient to survive

Ultimately, Plaintiff's claims alleging negligent hiring, training, supervision, and retention are barred by the GTLA's discretionary function exception and civil rights exception. Therefore, these claims are **DISMISSED**.

### III.     Injunctive and Declaratory Relief

Plaintiff also seeks injunctive and declaratory relief, but Defendants claim this request is moot and should be dismissed on that basis.

Although it is an initial hurdle to relief, the doctrine of mootness was not created to stymie the judicial process. Instead, it serves a fundamental role in preserving the separation of powers between each body of our tripart federal government. The Framers permitted federal courts to hear only "Cases" and "Controversies" between parties. U.S. Const. art. III, § 2. Stated concisely, federal courts may only pass judgement upon conflicts where each party has a concrete stake in the outcome. Thus, courts are prohibited from issuing advisory opinions on hypothetical matters. At the core, the purpose of the federal courts is to resolve live disputes, and the doctrine of mootness compels courts to ask whether a live controversy exists between the parties. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (quoting *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (Frankfurter, J., dissenting)).

Moreover, the mootness doctrine requires that a case or controversy exist throughout all stages of litigation, not simply at the time of filing. *United States v. Juv. Male*, 564 U.S. 932, 936 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). In essence, if a court cannot provide a remedy to the parties because the issue has found an independent resolution, the question before the court is moot. *See id.* However, it is possible that an issue is not moot if it is an issue that is "capable of repetition, yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 148–

---

the GTLA's discretionary function immunity. 2018 U.S. Dist. LEXIS 217804, at *11 (W.D. Tenn. Dec. 27, 2018).

149 (1975). Stated differently, if the issue is short in duration so that a court cannot provide a remedy before the issue resolves itself but the complaining party will likely experience the alleged harm again, a court may still resolve the issue. *Juv Male*, 564 U.S. at 938.

Here, it appears that the claim for injunctive relief is moot because Plaintiff is no longer subject to the confines of Hardeman County Jail. Thus, even if the Court granted Plaintiff's request for an injunction, Plaintiff would not experience any direct, personal benefit. Accordingly, Plaintiff's request as to an injunction or declaratory relief is outside the power of this Court.

However, Plaintiff argues that this is a live issue for other individuals at Hardeman County Jail. In his Response, Plaintiff argues that "Plaintiff . . . is asking for prospective injunctive relief for present or future inmates and as such, he should be allowed to conduct discovery to see whether such relief is warranted in this matter." (ECF No. 13, at 13.) But this statement ignores established case law on the doctrine of mootness. The Court cannot provide redress because, as shown by the Sixth Circuit, Plaintiff cannot maintain a suit on behalf of other inmates. "A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." *Corn v. Sparkman*, 82 F.3d 417 (6th Cir. 1996) (citing *Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981)) (internal citations omitted). Here, because Plaintiff is bringing a claim on behalf of other prisoners, the claim is moot and is subject to dismissal.

Finally, although one could argue that this is an issue that is capable of repetition yet evading review, the exception does not seem to apply here. Principally, it does not appear likely that Plaintiff will again experience confinement in Hardeman County Jail. It would be odd for the Court to assume that Plaintiff will again commit an act worthy of detention. *See, e.g.*, *Lowe v. Oppy*, 2015 WL 1439345, at *3 (S.D. Ohio Feb. 10, 2015) ("Further, . . . because Plaintiff has not demonstrated a reasonable expectation that he will be transferred back to [the relevant prison], the capable-of-

repetition exception to the mootness doctrine does not apply.") Thus, Plaintiff's request for injunctive and declaratory relief must be denied as moot.

Therefore, Plaintiff's demand for injunctive and declaratory relief against Defendant Hardeman County is moot and Plaintiff's request for relief on this basis is **DISMISSED**.

### IV.     Punitive Damages Under § 1983.

Under § 1983, a plaintiff may not recover punitive damages against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (". . . we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Moreover, Tennessee courts hold that under the GTLA, "punitive damages are not recoverable from either the governmental entity or the employee in an action arising from the negligence of the employee." *Johnson v. Smith*, 621 S.W.2d 570, 572 (Tenn. Ct. App. 1981) (citing *Tipton County Board of Education v. Dennis*, 561 S.W.2d 148, 152 (Tenn. 1978)). Thus, Plaintiff's claim for punitive damages here must also be dismissed to the extent that it is raised against Hardeman County.

However, for individual defendants, punitive damages are appropriate in a § 1983 action "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King v. Zamiara,* 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 (1983)). "Because punitive damages are a mechanism for punishing the defendant for "willful or malicious conduct," they may be granted "only on a showing of the requisite intent." *Id.* (quoting *Memphis Cmmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 306 n. 9 (1986)). "Although punitive damages may be available upon a showing of "evil motive or intent" or "callous indifference," punitive damages are also appropriate when a defendant's action involves even reckless disregard of the plaintiff's rights." *See Smith,* 461 U.S. at 56.

Here, the facts indicate that Plaintiff was intoxicated or otherwise impaired when he was placed in a top bunk of his jail cell. After falling once, he was again placed in the top bunk despite inmate requests that staff evaluate Plaintiff. Unfortunately, Plaintiff fell from his bunk a second time, causing significant injury. Although it does not appear that Defendant Wiggins acted maliciously, there is enough factual content alleged to show that Wiggins may have acted recklessly. Therefore, Plaintiff's claim for punitive damages against Defendant Wiggins pursuant to § 1983 is not subject to dismissal.

Therefore, Plaintiff's demand for punitive damages against Defendant Hardeman County is unavailing and is **DISMISSED**. But Plaintiff's claim for punitive damages against Defendant Wiggins remains intact.

## CONCLUSION

In sum, Defendants' Partial Motion to Dismiss (ECF No. 7) is **GRANTED**. Plaintiff's claims against Hardeman County and Defendant Judy Wiggins covered by the GTLA are **DISMISSED**. Plaintiff's request for injunctive and declaratory relief is **DISMISSED** as being moot. Plaintiff's petition for punitive damages is **DISMISSED** as to Defendant Hardeman County but survives as to Defendant Wiggins.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 27, 2022.